UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MELISSA FOWLER,

       Plaintiff,

v.                                                     Case No:  2:16-cv-665-FtM-38CM

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

---

## REPORT AND RECOMMENDATION[1]

Plaintiff Melissa Fowler seeks judicial review of the denial of her claim for supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner").  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons discussed herein, the Court recommends that the decision of the Commissioner be affirmed.

### I.   Issues on Appeal[2]

Plaintiff raises three issues on appeal: (1) whether substantial evidence supports the finding of the Administrative Law Judge ("ALJ") that Plaintiff does not meet or equal Listing 12.05; (2) whether the ALJ properly accorded little weight to

---

[1] A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

[2] Any issue not raised by Plaintiff on appeal is deemed to be waived.  *Access Now, Inc. v. Sw. Airlines Co.,* 385 F.3d 1324, 1330 (11th Cir. 2004) (holding that "a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

the opinion of a vocational rehabilitation examiner; and (3) whether substantial evidence supports the ALJ's finding that there are jobs available in significant numbers in the national economy Plaintiff can perform.

## II.   Procedural History and Summary of the ALJ's Decision

On March 14, 2012, Plaintiff filed an application for SSI.   Tr. 91.   Plaintiff alleged disability due to chronic obstructive pulmonary disease ("COPD"), an impulse control disorder, depression, and a learning disability.   *Id.*   Plaintiff's applications were denied initially and upon reconsideration.   Tr. 125-30, 139-43.   Plaintiff requested and received a hearing before ALJ Joseph L. Brinkley on January 6, 2015, who presided over the hearing in Falls Church, VA.   Tr. 32, 170-74.   Plaintiff appeared and testified at the hearing via video teleconference from Fort Myers, Florida.   Tr. 34.   She was represented by counsel during the hearing.   *Id.*   A vocational expert ("VE") appeared and testified at the hearing via telephone.   *Id.*

On March 17, 2015, the ALJ issued a decision finding Plaintiff not disabled since March 14, 2012.[3]   Tr. 26.   At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since March 14, 2012.   Tr. 16.   At step two, the ALJ determined that Plaintiff has the following severe impairments: obesity, mild thoracic spondylosis, asthma, a learning disorder, a mood disorder, and cannabis abuse.   *Id.*   At step three, the ALJ concluded that Plaintiff "does not have an

---

[3] Plaintiff previously filed an application for SSI on February 22, 2011.   Tr. 14, 90. The ALJ stated that although her application was denied initially on April 13, 2011, Plaintiff did not request any further review of that decision.   Tr. 14.   At the beginning of the hearing before the ALJ, Plaintiff's counsel requested to reopen Plaintiff's prior application, but the ALJ denied the request in his decision.   Tr. 14, 35.

impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 17.

The ALJ then determined that Plaintiff has the residual functional capacity ("RFC") to perform light work, except that:

> [Plaintiff] can occasionally climb ramps stairs, balance, kneel, and stoop; cannot crawl, crouch, or climb ladders, ropes, or scaffolds; avoid concentrated exposure to environmental irritants, humidity, wetness, vibrations, extreme hot or cold temperatures, and workplace hazards including unprotected heights, dangerous machinery, and uneven terrain; is limited to moderate noise level; is limited to unskilled, simple, routine, repetitive tasks; can understand, follow and complete very simple, short tasks (meaning she would be better suited for working with things rather [than] data or people); can occasionally engage in superficial contact with general public; can occasionally engage team or tandem work; and is limited to the types of low stress jobs that do not require high volume production quotas and fast paced assembly line work.

Tr. 19. Next, the ALJ found that Plaintiff has no past relevant work. Tr. 24. Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform and therefore concluded she has not been under a disability from March 14, 2012. Tr. 25-26.

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on July 5, 2016. Tr. 1-3. Accordingly, the March 17, 2015 decision is the final decision of the Commissioner. Plaintiff filed an appeal in this Court on August 29, 2016. Doc. 1.[4] This matter is now ripe for review.

---

[4] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned

### III.    Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).   The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. §416.920. The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011)). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner.   *Id.* at 933; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).   The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and

---

that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

whether the findings are supported by substantial evidence.  *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)).   Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision."  *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire

record to determine the reasonableness of the factual findings).   It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.   *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citing *Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971)).   The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review.   *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

## IV.   Relevant Assessments of Plaintiff's Intellectual Ability

Because each of the issues Plaintiff raises concern her mental impairments, the Court will summarize the relevant records.   On April 6, 2011, Nancy Kelly, Psy.D., performed a consultative examination of Plaintiff.   Tr. 469.   Dr. Kelly assessed Plaintiff's psychological and learning disabilities.   Tr. 464.   Dr. Kelly noted that Plaintiff traveled approximately twenty miles by public transportation to the appointment.   *Id.*   Dr. Kelly indicated that Plaintiff had been homeless intermittently since 2010 and stayed with her sister approximately three times a week and with her friends during the rest of the week.   *Id.*   At the time Plaintiff was in her senior year of high school at the Richard Milburn Academy and was scheduled to graduate when she turned twenty-two.   *Id.*   Plaintiff reported that she had been in special education classes since the first grade because of her learning disability in math and reading.   *Id.*

Plaintiff reported that she had been hospitalized at Lee Mental Health for behavioral problems when she was eleven years old.   *Id.*   Plaintiff also completed

two commitment programs with the Department of Juvenile Justice when she was sixteen and seventeen years old. *Id.* Furthermore, Plaintiff reported a family history of psychiatric problems. Tr. 465. She noted that her biological mother was diagnosed with bipolar disorder, and her biological parents had symptoms of alcoholism. *Id.* Despite her history, Plaintiff denied receiving any outpatient treatment. Tr. 464.

During the evaluation, Plaintiff indicated that her appetite was normal, and she had experienced no significant weight gain or loss over the past year. Tr. 465. In contrast, Plaintiff reported that she had difficulty breathing and falling asleep, waking up three times per night. *Id.* She also had depressive symptoms including dysphoric moods, a feeling of guilt and hopelessness, irritability, fatigue and difficulties with concentration. *Id.* Plaintiff further reported anxiety-related symptoms including irritability and "bad dreams." *Id.* In addition, Plaintiff had panic-associated symptoms including heart palpitations, a fear of dying and a choking sensation. *Id.* Plaintiff stated that her symptoms occurred several times a day. *Id.* Dr. Kelly also noted Plaintiff's cognitive symptoms including difficulties with short- and long-term memory, problem with concentration and receptive language deficits. *Id.*

In contrast, Plaintiff did not report any symptoms related to mania or thought disorder and denied any suicidal ideation. *Id.* Plaintiff also denied any history of drug or alcohol abuse and was cooperative during the evaluation. *Id.* She appeared to be her stated age of twenty and was casually dressed. *Id.* She was well groomed

with no distinctive features related to gait, posture or motor behavior.   *Id.*   She made appropriate eye contact and adequate overall presentation.   *Id.* Furthermore, Plaintiff had coherent and goal-directed thought processes, and showed no evidence of hallucinations, delusions or paranoia.   Tr. 466.   Her mood was neutral, and her sensorium was clear.   *Id.*   She also was oriented to person, place and time.   *Id.*

Regardless, Dr. Kelly found that Plaintiff's speech was slurred, although the quality of her voice was clear.   *Id.*   Dr. Kelly further noted that Plaintiff's expressive language skills were slightly impaired, and her receptive language was poorly developed.   *Id.*   Dr. Kelly opined that Plaintiff's affect was dysphoric, and her attention and concentration were impaired due to limited intellectual functioning. *Id.*   Plaintiff was not able to perform simple calculations or serial 3s, although she could perform counting tasks.   *Id.*   Dr. Kelly also found that Plaintiff's recent and remote memory skills were mildly impaired due to her limited intellectual functioning.   *Id.*   Plaintiff was able to recall three out of three objects immediately, two out of three after five minutes, two categories of digits forward and no categories of digits backward.   *Id.*   Overall, Dr. Kelly opined that Plaintiff's cognitive functioning was in the borderline range, and Plaintiff had limited general fund of information, limited insight and fair judgment.   *Id.*

In addition, Dr. Kelly administered the Wechsler Adult Intelligence Scale-IV ("WAIS-IV").   *Id.*   Plaintiff was cooperative with the testing and was motivated to perform well.   *Id.*   Plaintiff also was alert without significant symptoms of distress

or fatigue.   *Id.*   She recalled and understood instructions and responded thoughtfully to the presented tasks.   *Id.*   Plaintiff achieved a verbal comprehension IQ score of 68, a perceptual reasoning IQ score of 77, a working memory IQ score of 71, processing speed IQ score of 86 and a full-scale IQ score of 71.   Tr. 467.

Dr. Kelly opined that Plaintiff's full-scale IQ score was in the borderline range, indicating Plaintiff's significant intellectual deficits.   *Id.*   Nonetheless, Dr. Kelly opined that there was no significant difference between Plaintiff's verbal comprehension and perceptual reasoning composite scores, suggesting that her verbal reasoning and nonverbal reasoning skills were evenly developed.   *Id.*

Dr. Kelly further found that Plaintiff's verbal comprehension composite score was in the extremely low range and indicated underdeveloped learning abilities, word knowledge and language development.   *Id.*   Dr. Kelly noted that these findings revealed Plaintiff's challenges with the ability to define essential and non-essential features of objects and to understand basic social standards for behavior.   *Id.*   Dr. Kelly determined that Plaintiff also had challenges with mastery skills related to common sense and practical reasoning to solve everyday problems.   *Id.*

Dr. Kelly also opined that Plaintiff's perceptual reasoning score was in the borderline range, suggesting a low level of skills for tasks that measure nonverbal reasoning abilities.   *Id.*   Dr. Kelly noted that Plaintiff struggled with tasks designed to measure abstract categorical reasoning and visual information processing.   *Id.*   Plaintiff further experienced challenges with tasks that assess visual-motor coordination and visual perception in organization.   *Id.*   In addition, Dr. Kelly

found that Plaintiff's performance on tasks measuring working memory reflected borderline abilities to store, retrieve and manipulate information held in her immediate awareness.   *Id.*

Based on these scores, Dr. Kelly concluded that Plaintiff has limited cognitive flexibility, difficulty processing and transforming information given orally and a lack of ability related to sequencing skills.   Tr. 468.   Dr. Kelly further determined that Plaintiff has a lower ability for tasks requiring speed and efficiency and challenges with short-term memory, visual discrimination and concentration.   *Id.*

Despite the noted limitations, Dr. Kelly found that Plaintiff is able to dress, bathe and groom herself, cook and prepare food, clean, do laundry, shop and take public transportation.   *Id.*   Although Plaintiff reported that she did not socialize at all, she had a good relationship with her sister and an "ok" relationship with her mother.   *Id.*   Furthermore, she had hobbies including listening to music and spent her day going to school.   *Id.*   When she was not in school, Plaintiff spent her day walking around.   *Id.*

Dr. Kelly opined that Plaintiff could follow and understand simple directions and instructions, perform simple tasks independently and maintain attention and concentration.   *Id.*   On the other hand, Dr. Kelly determined that Plaintiff has marked difficulties maintaining a regular schedule, learning new tasks, performing complex tasks independently and relating adequately with others.   *Id.*   Dr. Kelly opined that Plaintiff also has moderate difficulties making appropriate decisions and appropriately dealing with stress.   *Id.*   Dr. Kelly found that Plaintiff's difficulties

are caused by cognitive deficits and limited coping skills and resources.   *Id.*   Dr. Kelly concluded that the results of her examination were consistent with psychiatric and cognitive problems, and Plaintiff's problems may interfere significantly with her ability to function on a daily basis.   *Id.*

Dr. Kelly diagnosed Plaintiff with impulse control disorder not otherwise specified, and cited as psychosocial stressors Plaintiff's limited support network and academic and vocational problems.   Tr. 469.   Dr. Kelly deferred a diagnosis regarding Plaintiff's personality disorders and intellectual disabilities.   *Id.* Plaintiff's level of function on the Global Assessment of Functioning ("GAF") Scale was 50.   *Id.*   Dr. Kelly recommended individual psychological therapy, psychiatric intervention medical follow-up and vocational training and rehabilitation.   *Id.*   Dr. Kelly opined that Plaintiff's prognosis was fair given her cognitive deficits and limited support system.   *Id.*   In contrast, Dr. Kelly found that Plaintiff "will be" able to manage her own funds.   *Id.*   In assessing Plaintiff's RFC, the ALJ discussed Dr. Kelly's evaluation.   Tr. 21-22.   The ALJ accorded limited weight to Dr. Kelly's opinion, stating it was not completely consistent with Plaintiff's abilities when viewed in light of all of the medical evidence of record.   Tr. 24.

On April 2, 2014, Plaintiff's vocational counselor referred Plaintiff to Noble Harrison, Ph.D for a psychological assessment.   Tr. 574.   The vocational counselor requested Dr. Harrison to assess Plaintiff's general intellectual functioning, personality functioning, vocational interest and aptitude, adaptive functioning and

possibility of an attention-deficit disorder.   *Id.*   Dr. Harrison also tested Plaintiff's learning disability because of Plaintiff's learning problems.   *Id.*

Plaintiff reported at the time she lived with her friend and was looking for housing through a program.   *Id.*   She also noted that she was trying to find a job through a career center.   *Id.*   She indicated that although she had been in three other career programs, she had been removed from them.   *Id.*   Plaintiff reported that when she had tried to work at Goodwill for about one month, she was able to work only for two weeks because of her illness.   *Id.*   She also had worked only for two days at the Salvation Army Thrift Store because she did not follow instructions, and she and her employers were rude to one other.   *Id.*   Although she had worked for some time in the Salvation Army kitchen, she did not know and could not learn how to cut onions and peel cucumbers.   *Id.*   She lost her job because she got yelled at and yelled back.   *Id.*   She partly attributed her problem to the fact that she was a "Capricorn," stating, "that is the way they are."   Tr. 575.

Dr. Harrison noted that Plaintiff had been in an exceptional student educational program and did not graduate from high school.   *Id.*   Plaintiff was enrolled in school from the fourth grade to the tenth grade.   *Id.*   While in school, she was sent to a behavioral program because of her behavioral and conduct problems.   *Id.*

Plaintiff told Dr. Harrison that she was receiving counseling at the Ruth Cooper Center.   Tr. 574.   She reported that she was supposed to take medications prescribed by the center, and her problems included mentally wandering, getting

angry and "lash[ing] out" at people.   *Id.*   Dr. Harrison indicated that Plaintiff had been treated "fairly consistently and regularly" at the Ruth Cooper Center since the age of eleven.   Tr. 575.   Plaintiff noted that at the Ruth Cooper Center, she was diagnosed with schizophrenia and bipolar and depressive disorders.   *Id.*   She reported, however, that she took prescribed medications only when she was very angry.   *Id.*

Plaintiff claimed that she had no friends and normally went home after trying to find a job and played with her daughter.[5]   *Id.*   Plaintiff reported that she typically went to bed at 7:00 p.m. and woke up at 6:00 a.m. to take her daughter to preschool.   *Id.*   She noted that she could not work at McDonald's restaurants because she could not find transportation to and from work during the required work hours.   *Id.*   She further indicated that she did not know how to fill out applications. *Id.*

She also reported her family's history of mental illness.   *Id.*   Plaintiff told Dr. Harrison that her mother and sister shared the same psychological problems as she. *Id.*   She further reported that she used to be violent and erratic in elementary school. Tr. 576.   Despite her history, Plaintiff was on time for her appointment and was oriented to time, place, person and circumstances.   *Id.*   Plaintiff was candid in reporting her psychiatric, behavioral and educational history.   *Id.*   Nonetheless,

---

[5] The disability report from March 14, 2012 notes that Plaintiff was pregnant.   Tr. 298.   The psychiatric evaluation of Plaintiff from SalusCare, Inc., dated November 8, 2013, indicates that Plaintiff lived with her one-year old daughter.   Tr. 553.   At the time of the hearing, Plaintiff's daughter was two years old.   Tr. 18, 39-40.

she appeared to Dr. Harrison to be very low intellectually and to have low achievement levels.   *Id.*   She was easily distracted during the assessment and was moving around constantly in her chair and orienting herself to noises and movements outside the office.   *Id.*

During the visit, Plaintiff was relatively calm and cooperative throughout and at times showed a good sense of humor.   *Id.*   She would follow Dr. Harrison's initiated conversations, but not initiate one herself.   *Id.*   She did not show at all any signs of frustration, anger or hostility; and her affect was flat.   *Id.*   She admitted to Dr. Harrison her problems controlling her temper because she believed people could easily irritate her.   *Id.*

Plaintiff completed, among other tests, the WAIS-IV and the Adaptive Behavior Assessment System, II Edition ("ABAS").   *Id.*   She put adequate efforts in all test activities and showed good test-taking efforts and persistence.   *Id.*   On the WAIS-IV, Plaintiff achieved a verbal comprehension index score of 66, a perceptual reasoning index score of 58, a working memory index score of 66, processing speed index score of 71, a full-scale IQ score of 59, and a general ability index score of 58, placing her in the mild range in intellectual disability.   *Id.*   On the ABAS test, Plaintiff obtained a general adaptive composite score of 65, pragmatic score of 69, social score of 65, and academic score of 60.   Tr. 579.   As with Plaintiff's WAIS-IV scores, Dr. Harrison indicated that Plaintiff's adaptive functioning were in the mild range of intellectual disability.   *Id.*

He opined that although Plaintiff's reading ability is "essentially nil," there are various occupations she could perform, such as cook's helper, dry cleaner helper and supply cleaner helper.   Tr. 580.   He found that Plaintiff would be very poor at learning and maintaining appropriate behaviors in any kind of normal job settings because of Plaintiff's very low intellectual capacity, significant mood variability and anger management problems.   *Id.*   He indicated, however, that Plaintiff did not take medications prescribed at the Ruth Cooper Center, except when she felt she was getting angry.   *Id.*   He noted that her inconsistency in taking her medications did not allow the medications to reduce her affective instability.   *Id.*   Although Dr. Harrison recommended that Plaintiff maintain her contacts with the Ruth Cooper facility, he indicated that it would not help her if she did not take the medication as prescribed.   *Id.*

Furthermore, Dr. Harrison opined that Plaintiff has attention-deficit/hyperactivity disorder ("ADHD") problems based on his clinical observation and Plaintiff's history of high levels of distractibility, impulsiveness, poor planning and organization in approaching tasks and little realization or capacity to adjust her behavior to the social demands of a situation.   *Id.*   He also indicated that Plaintiff was unable to complete formal personality testing because of her low reading levels. *Id.*

Based on his overall findings, Dr. Harrison diagnosed Plaintiff with mild intellectual disability; ADHD, combined presentation; and moderate bipolar II disorder, most recent episode hypomanic.   *Id.*   He recommended that Plaintiff

maintain all psychiatric contacts and appropriately follow the given prescriptions. *Id.* He further opined that Plaintiff did not have the ability to obtain and maintain employment based on the combination of "her very low intellectual capability, being in the mild range of intellectual disability, as well as her severe affective instability with sudden and unexpected temper tantrums or angry episodes and overall affective instability of a severe nature." *Id.* In assessing Plaintiff's RFC, the ALJ considered and accorded little weight to Dr. Harrison's opinion finding the opinion was inconsistent with the totality of the medical evidence and his own notes. Tr. 24.

## V.   Discussion

### a. *Whether substantial evidence supports the ALJ's finding that Plaintiff does not meet or equal Listing 12.05*

At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 17. Specifically, the ALJ discussed and found that Plaintiff's mental impairments of a learning disorder, a mood disorder and cannabis abuse do not meet or equal Listings 12.04, 12.08, and 12.09. *Id.* In making his finding, the ALJ considered the four broad functional areas set out in the regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments, the so-called "paragraph B" criteria.[6] Tr. 17-18. He determined that Plaintiff had mild restrictions in activities of daily living, moderate difficulties in social functioning, moderate difficulties in

---

[6] 20 C.F.R., Part 404, Subpart P. Appendix 1.

concentration, persistence and pace and only one episode of decompensation.   Tr. 18.
The ALJ further held that his detailed analysis of the evidence in assessing Plaintiff's
RFC supports his findings.   Tr. 18-19.

Plaintiff argues that the ALJ erred by not specifically addressing whether she
meets Listing 12.05, asserting her mental impairments satisfy the criteria for Listing
12.05.   Doc. 20 at 9-12; Doc. 24.   The Commissioner responds that the ALJ
implicitly considered and found Plaintiff's impairments do not meet Listing 12.05,
and substantial evidence supports this finding.   Doc. 21 at 5-14.   The Court concurs
with the Commissioner on this issue.

The listings describe impairments that the Commissioner considers severe
enough to prevent a person from doing "any gainful activity, regardless of his or her
age, education, or work experience."   *See* 20 C.F.R. §416.925(a).   If an adult's
impairment "meets or equals one of the listed impairments, the claimant is
conclusively presumed to be disabled. . . ."   *Sullivan v. Zebley*, 493 U.S. 521, 532
(1990) (citing *Bowen*, 482 U.S. at 141).   The Eleventh Circuit has described how the
standard is met:

> In order to *meet* a listing, the claimant must (1) have a diagnosed
> condition that is included in the listings and (2) provide objective
> medical reports documenting that this condition meets the specific
> criteria of the applicable listing and the duration requirement. A
> diagnosis alone is insufficient.

*Wilkinson ex rel. Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987) (citing 20
C.F.R. § 416.925(c)-(d)).   The burden of establishing that a claimant's impairments
meet or equal a listing rests with the claimant, who must produce specific medical

findings that satisfy all the criteria of a particular listing.   20 C.F.R. § 404.1520(a)(4).

The introductory material to the mental disorders listings clarifies Listing 12.05, stating:

> The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings.   Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability.   It also contains four sets of criteria (paragraphs A through D).   If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, [the Commissioner] will find that your impairment meets the listing.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A (2015).   Listing 12.05 provides, in pertinent part, that a claimant is disabled if he or she meets the following criteria:

> 12.05 Intellectual disability: intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, *or* D are satisfied.
>
> . . .
>
> B. A valid verbal, performance, or full scale IQ of 59 or less; OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> . . .

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 (2015) (emphasis added).   Listing 12.00(D)(6)(c) mandates that "where more than one IQ is customarily derived from the test administered, *e.g.*, where verbal, performance, and full scale IQs are provided

in the Weschler [sic] series, we use the *lowest* of these in conjunction with 12.05." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(D)(6)(c) (emphasis added), *cited in Hodges v. Barnhart,* 276 F.3d 1265, 1268 n. 1 (11th Cir. 2001).

Accordingly, in order to meet listing 12.05, "a claimant must at least[:] 1) have significantly subaverage general intellectual functioning; 2) have deficits in adaptive [functioning]; and 3) have manifested deficits in adaptive [functioning] before age 22." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997); 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 (2015). Additionally, a claimant must meet one of the four sets of criteria found in 12.05A, B, C, or D, in order to show that his or her impairments are severe enough to meet or equal listing 12.05. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A) (2015). Relevant here are paragraphs B and C of Listing 12.05. Doc. 20 at 10-12; Doc. 24 at 2-3.

Plaintiff argues that the ALJ did not consider even implicitly whether she meets Listing 12.05 because he expressly made findings regarding Listings 12.04, 12.08, and 12.09 without discussing Listing 12.05. Doc. 20 at 11; Doc. 24 at 3. But, contrary to Plaintiff's argument, the Eleventh Circuit has held that "it is not required that the Secretary mechanically recite the evidence leading to her determination. There may [even] be an implied finding that a claimant does not meet a listing." *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) (citing *Edwards v. Heckler,* 736 F.2d 625, 629 (11th Cir. 1984)).

In a case analogous to the instant case, the plaintiff argued that there was a strong possibility that her condition medically equaled a listing but the ALJ erred by

not explaining his determination that the plaintiff's condition did not medically equal any listing. *Johnson v. Barnhart*, 148 F. App'x 838, 841 (11th Cir. 2005). The court held,

> [t]he ALJ explained the weight he accorded to certain pieces of evidence and stated that, based on all the record evidence, [the plaintiff's] condition did not medically or functionally equal a listed impairment. This statement is sufficient evidence that the ALJ considered (and rejected) a determination that [the plaintiff's] condition met Listing 103.03(B).

*Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002)). Although an unpublished opinion is not binding on this Court, the Court finds *Johnson* persuasive in that it relies on Eleventh Circuit precedent. *Id.* (citing *Wilson*, 284 F.3d at 1224 for its holding that an ALJ's statement that "the medical evidence establishes that [the plaintiff] had [several injuries] which constitute a 'severe impairment,' but that he did not have an impairment or *combination of impairments* listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4" was sufficient evidence that the ALJ considered the combined effects of the plaintiff's impairments). Likewise, the ALJ here considered Plaintiff's medical evidence and determined that her impairments do not meet listed impairments. Tr. 17-24.

The Eleventh Circuit has applied this principle to Listing 12.05 and held that the ALJ may implicitly find the claimant does not meet Listing 12.05. *Rodriguez v. Comm'r of Soc. Sec.*, 633 F. App'x 770, 773-74 (11th Cir. 2015) (holding that the ALJ implicitly found that a claimant did not meet Listing 12.05 by properly relying on the claimant's work history and daily activities and concluding that the claimant did not manifest deficits in adaptive functioning consistent with intellectual disability);

*James v. Comm'r of Soc. Sec., Admin.*, 657 F. App'x 835, 838 (11th Cir. 2016) (citing *Hutchison*, 787 F.2d at 1463) ("It is true that the ALJ never explicitly discussed whether [the claimant] met Listing 12.05(C).   But a finding that a claimant's impairments are not contained in a Listing may be implied from the ALJ's decision.").

Here, the Court recommends that the ALJ implicitly found Plaintiff does not meet Listing 12.05.   Similar to *Johnson*, although here the ALJ did not explicitly discuss Listing 12.05, he discussed Plaintiff's daily activities and the relevant medical evidence and the weight to which he accorded the evidence and found that Plaintiff's impairments do not meet or medically equal the severity of one of the listed impairments.   Tr. 17; see *Johnson*, 148 F. App'x at 841 (citing *Wilson*, 284 F.3d at 1224).   The ALJ further held that his evidentiary analysis regarding Plaintiff's RFC supports his findings.   Tr. 18-19; *see Johnson*, 148 F. App'x at 841 (citing *Wilson*, 284 F.3d at 1224).

Substantial evidence supports the ALJ's listing findings.   As noted, subparagraph B of Listing 12.05 requires "[a] valid verbal, performance, or full scale IQ of 59 or less."   20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.   Plaintiff argues that she satisfies the subparagraph B based on the results of the WAIS-IV and the Adaptive Behavior Assessment System administered by Dr. Harrison.   Doc. 20 at 10; Tr. 574-81.   Plaintiff obtained a verbal comprehension index score of 66 and a full-scale IQ score of 59 on April 2, 2014.   Tr. 576.

Plaintiff's reliance on a single set of IQ scores, however, ignores a second set of IQ scores from the WAIS-IV administered by Dr. Kelly.   Doc. 20 at 10.   On April 6, 2011, on the WAIS-IV administered by Dr. Kelly, Plaintiff achieved a verbal comprehension IQ score of 68 and a full-scale IQ score of 71.   Tr. 467.   As the Commissioner correctly argues, the Eleventh Circuit has held that when different IQ scores from multiple administrations of testing are available, the regulations do not address on which IQ score the ALJ should rely.   Doc. 21 at 7-8; *Wilbon v. Comm'r of Soc. Sec.*, 181 F. App'x 826, 829 (11th Cir. 2006); *see* C.F.R. pt. 404, subpt. P, app. 1, § 12.00(D)(6)(c).   As a result, in *Wilbon*, the court found that when two sets of IQ scores were available from administration of the test from two different individuals, the ALJ was not required to consider the lower scores of the two ranges of test scores, and substantial evidence supported the ALJ's determination that Plaintiff's IQ scores were in the higher of the two ranges.   *Wilbon*, 181 F. App'x at 829.   The Court explained:

> Where a series of IQ scores customarily are generated by a single test administration, the regulations require that the lowest of those scores be used in conjunction with Listing 12.05. 20 C.F.R. Pt. 404, Supt. P, App. 1, § 12.00(D)(6)(c) ("In cases where more than one IQ is customarily derived from the test administered ..., we use the lowest of these in conjunction with 12.05"); *Hodges v. Barnhart,* 276 F.3d 1265, 1268 n. 1 (11th Cir.2001). Under this rule, Dr. Crowell's scores are considered in the below 59 range, even though the performance score was 65. But the "lowest score" rule does not address which IQ score an ALJ should rely upon when multiple sets of tests have been administered. We see no error in the ALJ's consideration of the multiple IQ scores generated by different test administrations. Viewed in the light of the full record, substantial evidence supports the ALJ's finding that Plaintiff's IQ score was in the 60 to 70 range.

*Id.* at 828-29.   Here, after considering both Drs. Kelly's and Harrison's opinions, the ALJ afforded little weight to Dr. Harrison's opinion because he found it to be inconsistent with the medical evidence of record and the psychologist's own treatment notes.   Tr. 24.   Thus, the ALJ implicitly chose Plaintiff's scores from Dr. Kelly's tests over ones from Dr. Harrison's opinion.   In assessing Plaintiff's RFC, the ALJ explicitly noted Plaintiff's full-scale IQ score of 71 and discussed Dr. Kelly's opinion. Tr. 21.   He implicitly considered the results of the tests administered by Dr. Harrison, evidenced by his discussion of Dr. Harrison's opinion.   Tr. 24.   The ALJ gave more weight to Dr. Kelly's opinion than to Dr. Harrison's opinion by assigning it limited weight.   Tr. 24.   The ALJ's discussion of these opinions and accordance of different weights clearly demonstrate that the ALJ implicitly credited the scores from Dr. Kelly's tests more than ones from Dr. Harrison's tests.   Tr. 24; *see Wilbon*, 181 F. App'x at 829.   Substantial evidence supports his finding.

Plaintiff's verbal comprehension IQ score of 68 and full-scale IQ score of 71 based on Dr. Kelly's tests are not below 59 and do not satisfy Listing 12.05B.   Tr. 467; *see* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05B (2015).   Plaintiff does not provide any legal authority that her lower scores from Dr. Harrison's tests trump the higher scores from Dr. Kelly's tests.   Docs. 20, 24.   As a result, the Court recommends that Plaintiff has not produced sufficient proof her impairments satisfy Listing 12.05B.   20 C.F.R. § 404.1520(a)(4).

Nor did the ALJ err in finding that Plaintiff failed to meet the criteria for presumptive disability under Listing 12.05C, as the Plaintiff asserts.   Doc. 20 at 11;

Doc. 24 at 2-3.   Plaintiff relies on a verbal comprehension IQ score of 68 from Dr. Kelly's tests and a verbal comprehension index score of 66 from Dr. Harrison's tests. Doc. 20 at 11; Doc. 24 at 2-3; Tr. 467, 576.   She also asserts that Dr. Harrison found her adaptive functioning sufficient to satisfy Listing 12.05.   Doc. 20 at 11; Tr. 579. The Commissioner responds that the IQ scores do not conclusively indicate intellectual disability.   Doc. 21 at 8-9.   The Commissioner also asserts that the evidence does not demonstrate Plaintiff's deficits in adaptive functioning.   *Id.* at 9-14.

The claimant establishes presumptive disability under 12.05C when the claimant shows: 1) "a valid verbal, performance, or full scale IQ of 60 through 70" and 2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function."   *Crayton*, 120 F.3d at 1219-20 (citation omitted); 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C (2015).   Nonetheless, a valid IQ score "need not be conclusive of mental retardation where the [] score is inconsistent with other evidence in the record on the claimant's daily activities and behavior."   *Lowery*, 979 F.2d at 837 (citing *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986)).   Accordingly, a qualifying IQ score only creates a rebuttable presumption that the claimant manifested deficits in adaptive functioning prior to the age of twenty-two.   *James*, 657 F. App'x at 837 (citing *Hodges*, 276 F.3d at 1269); *Lowery*, 979 F. 2d at 837)).   The Commissioner may rebut that presumption with evidence regarding the claimant's daily life.   *Id.* (citations omitted); *see also Rodriguez*, 633 F. App'x at 773-74 (holding that the ALJ properly relied on the

claimant's daily activities and work history to find no deficits in adaptive functioning consistent with intellectual disability).

Here, the Court recommends that even if Plaintiff meets the criteria for presumptive disability under 12.05C, the ALJ rebutted that presumption by presenting and analyzing substantial evidence of Plaintiff's daily activities.   Tr. 19-24; *see James*, 657 F. App'x at 838.   Plaintiff presents verbal IQ scores of 66 and 68, which if valid, create a rebuttable presumption that she has deficits in adaptive functioning.   Tr. 467, 576; Doc. 20 at 10-11; Doc. 24 at 2-3; *see Crayton*, 120 F.3d at 1219-20 (citation omitted).   Even assuming these scores are valid, Plaintiff must demonstrate that she meets the diagnostic criteria in Listing 12.05, which includes deficits in adaptive functioning, in addition to the criteria under 12.05C.   20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A) (2015).

The ALJ clearly found that Plaintiff does not lack deficits in adaptive functioning, and substantial evidence supports his decision.   Tr. 18.   Although the ALJ acknowledged that Plaintiff has certain difficulties, such as her inability to make money orders and a history of special education, he found that Plaintiff "is independent in her personal activities of daily living and is able to care for the needs of her daughter."   Tr. 18-20.   The ALJ determined that despite her alleged inability to understand words well enough to comprehend the meaning of color coordination, she correctly named her psychotropic medications during the hearing.   Tr. 24, 63. Furthermore, he noted that Plaintiff is able to use public transportation, take walks and use computers at the library.   Tr. 24, 244, 313, 464, 468.

Plaintiff's reports of daily activities support the ALJ's findings.   Tr. 242-246, 311-314.   Plaintiff does not need any special reminders to take care of personal needs and grooming, or help or reminders taking medicine.   Tr. 242, 312.   She is able to prepare her meals and does not need any help or encouragement with house and yard work.   Tr. 242, 312.   She can go out alone and use public transportation.   Tr. 243, 313.   She also uses computers at a church library once per week.   Tr. 244.   Plaintiff is able to pay bills, count change, handle a savings account and use a checkbook and money orders.   Tr. 243.   She also shops in stores and buys food every day.   Tr. 313.

Furthermore, other evidence shows Plaintiff's ability to engage in various tasks.   Tr. 350-76.   On July 14, 2014, two vocational experts on behalf of Successful Pathways, LLC ("Successful Pathways"), conducted a situational vocational evaluation of Plaintiff.   Tr. 350-76.   According to the evaluation, Plaintiff reported that she enjoys doing housekeeping and cleaning chores at her home.   Tr. 365. Plaintiff was able to call people and read to them the scripts provided.   Tr. 368.   She also easily filled in blank forms on a database program on the computer and demonstrated her ability to input information, use a mouse to insert space between fields and correctly spell names and addresses.   Tr. 369.   She also focused on her tasks while staying calm.   *Id.*

Plaintiff points to the ABAS test administered by Dr. Harrison and argues that the ALJ should have considered this test result.   Doc. 20 at 12; Doc. 24 at 4; Tr. 579. The Eleventh Circuit clearly has held, however, that neither the regulations nor the

court's precedent require the ALJ to assess adaptive functioning by referencing to a test score.   *Rodriguez*, 633 F. App'x at 774 (citing *Hodges*, 276 F.3d at 1268-69).

Plaintiff further asserts that the ALJ's assessment of the medical evidence is too vague to support his listing findings.   Doc. 24 at 4-5.   She argues that the ALJ accorded only some weight to the findings of the state agency medical consultants, not explaining what "some weight" means.   *Id.* at 4.   This argument is not relevant here because the state agency psychological consultants' findings were not probative and material to the ALJ's assessment of Plaintiff's adaptive functioning.   Tr. 18, 24. The ALJ's assessment was based on Plaintiff's own accounts of daily activities.   Tr. 18, 24; *see Rodriguez*, 633 F. App'x at 773-74; *James*, 657 F. App'x at 838. Accordingly, the Court recommends that the ALJ properly and implicitly found Plaintiff does not meet Listing 12.05.   *See Rodriguez*, 633 F. App'x at 773-74; *James*, 657 F. App'x at 838.

> b.  *Whether the ALJ properly accorded little weight to Dr. Harrison's opinion*

In assessing Plaintiff's RFC, the ALJ accorded little weight to Dr. Harrison's opinion because he found that the opinion is inconsistent with the totality of the medical evidence of record and with Dr. Harrison's own notes.   Tr. 24.   Plaintiff argues that the ALJ erred by giving little weight to Dr. Harrison's opinion because his reason for according little weight is not supported by substantial evidence.   Doc. 20 at 14.

Specifically, Plaintiff refers to Dr. Harrison's recommendation, which is as follows:

> Unfortunately, due to a combination of her very low intellectual capability, being in the mild range of intellectual disability, as well as her severe affective instability with sudden and unexpected temper tantrums or angry episodes and overall affective instability of a severe nature, I do not think that [Plaintiff] has the capacity to obtain and maintain employment at this point.   I strongly suggest that she continue applying and follow through with an application to achieve a disability status.

Tr. 580; Doc. 20 at 13-14.   Plaintiff asserts that Dr. Harrison's opinion is consistent with Dr. Kelly's opinion and the situational vocational evaluation by Successful Pathways.   Doc. 20 at 14-16.   Plaintiff relies on Dr. Kelly's findings that Plaintiff has difficulties engaging in certain tasks and the vocational evaluators' opinion that Plaintiff is not feasible for competitive employment.   *Id.*; Tr. 375-76, 468.

The Commissioner responds that whether Plaintiff is unable to work is a question reserved to the Commissioner.   Doc. 21 at 15.   Furthermore, the Commissioner asserts that Dr. Harrison saw Plaintiff only once and did not have an ongoing treatment relationship with Plaintiff.   *Id.* at 16.   The Commissioner claims that Dr. Harrison's opinion is inconsistent with the evidence in the record because Plaintiff is able to engage in a variety of daily activities and had unremarkable psychiatric evaluations.   *Id.* at 16-17.   The Commissioner also argues that the vocational experts' opinions are not medical professionals, and their opinions are not entitled any special significance or consideration.   *Id.* at 17.

Here, the Court recommends that Dr. Harrison's opinion as to whether Plaintiff could maintain employment is not a medical opinion but an issue reserved for the Commissioner.   The regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect

judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).   Opinions on some issues, such as whether the claimant is disabled or unable to work, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *see also* SSR 96-5p; *Hutchinson v. Astrue*, 408 F. App'x 324, 328 (11th Cir. 2011).

Furthermore, the Court recommends that the ALJ is not required to give any particular weight to the vocational evaluation by Successful Pathways.   Tr. 350-76. Successful Pathways' two vocational experts are "not a medical source at all, much less an 'acceptable medical source.'"   *Farnsworth v. Soc. Sec. Admin.*, 636 F. App'x 776, 784 (11th Cir. 2016) (citing SSR 06-03p, 2006 WL 2329939, at *1 (Aug. 9, 2006)); Tr. 350-76.   "Although the ALJ should consider evidence from non-medical sources, the ALJ is not required to assign the evidence any particular weight."   *Farnsworth,* 636 F. App'x at 784-85 (citing SSR 06-03p, 2006 WL 2329939, at *3-4 (Aug. 9, 2006)). Rather, "whether and how much weight the ALJ should give this kind of evidence depends upon the particular facts of the case and a variety of factors. . . ."   *Id.* at 785 (citing SSR 06-03p, 2006 WL 2329939, at *4 (Aug. 9, 2006)).

In light of the evaluation's nature, the Court recommends that the ALJ properly did not assign any weight to the vocational evaluation.   *See id.*   The

vocational experts, as non-medical sources, opined that Plaintiff is not feasible for competitive employment, which is an issue reserved for the Commissioner.  *See id.*; *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *Hutchinson*, 408 F. App'x at 328; Tr. 375-76.  As a result, even if the ALJ had not considered the vocational evaluation, it was harmless error because it would not have affected the ALJ's ultimate decision. *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (citing *Dyer*, 395 F.3d at 1211).

In addition, the Court recommends that the ALJ properly articulated his reasons for giving little weight to Dr. Harrison's opinion.  Tr. 24.  Under the regulations, the ALJ must weigh any medical opinion based on the treating relationship with the claimant, the length of the treatment relationship, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, the specialty of the medical source and other factors.  *See* 20 C.F.R. § 404.1527(c)(2)-(6).  When determining how much weight to afford an opinion, the ALJ considers whether there is an examining or treatment relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(1)-(6).  Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is

inconsistent with the record as a whole.   SSR 96-2p; *Crawford v. Comm'r of Soc. Sec.,* *363 F.3d 1155, 1159-60 (11th Cir. 2004)*.

Here, although the ALJ did not cite to specific medical evidence to support his reasons for according little weight to Dr. Harrison's opinion, the ALJ made a detailed analysis of Plaintiff's medical evidence in assessing Plaintiff's RFC.   Tr. 19-24.   After examining Plaintiff's medical evidence in detail, including Dr. Kelly's findings on which Plaintiff relies, the ALJ concluded that Dr. Harrison's opinion is inconsistent with "the totality of the medical evidence."   Tr. 21-22, 24; Doc. 20 at 14. The ALJ properly stated his reason for discrediting Dr. Harrison's opinion as required.   SSR 96-2p; *Crawford, 363 F.3d at 1159-60*.   The Court will not re-evaluate the ALJ's analysis of evidence simply because, as Plaintiff argues, conflicting evidence exists.   Doc. 20 at 14-15; *Lacina,* 606 F. App'x at 525 (citing *Grant,* 445 F.2d at 656).   It is the function of the Commissioner, and not the Court, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina,* 606 F. App'x at 525 (citing *Grant,* 445 F.2d at 656).   As a result, the Court recommends that the ALJ properly accorded little weight to Dr. Harrison's opinion. Tr. 24; *see* SSR 96-2p; *Crawford, 363 F.3d at 1159-60.*

> c.   *Whether the ALJ properly relied on the VE's testimony to find that there are a significant number of jobs available in the national economy Plaintiff could perform*

The ALJ limited Plaintiff's RFC to, among other factors, unskilled, simple, routine, repetitive tasks and the types of low-stress jobs that do not require high-volume production quotas and fast-paced assembly line work.   Tr. 19.   At step five,

the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy Plaintiff could perform.   Tr. 25.   The ALJ relied on the VE's testimony that given her limitations, Plaintiff could work as a cafeteria attendant (DOT[7] #311.677-010), a marker (DOT #209.587-034), and a cook/helper (DOT #317.687-010).   Tr. 25, 74.

The VE testified that although his testimony is consistent mostly with the information provided in the DOT, the DOT does not address Plaintiff's limitation to low-stress jobs based on production quotas.   Tr. 19, 75.   The VE explained, however, that the identified jobs impose low stress because they require first- or third-grade math and language skills and fourth-grade reasoning skills.   Tr. 75.   The VE stated that his testimony is based on his knowledge, education, training and work history of thirty-five years.   *Id.*   The ALJ noted the VE's explanation in this decision.   Tr. 25-26.

Plaintiff argues that although the identified jobs are at a reasoning level of two, the ALJ did not explain how Plaintiff could perform these jobs given Plaintiff's limitation to simple, routine, repetitive tasks.   Doc. 20 at 17-18.   Plaintiff asserts that occupations at a reasoning level of two may exceed the work capacity of an individual restricted to simple and repetitive tasks.   *Id.*   Plaintiff claims that this creates a conflict between the VE's testimony and the DOT, which the ALJ did not address.   *Id.* at 18.   The Commissioner responds that the identified jobs are compatible with Plaintiff's limitation.   Doc. 21 at 19.   Furthermore, the

_____

[7] DOT refers to the Dictionary of Occupational Titles ("DOT").

Commissioner asserts that the ALJ properly fulfilled his obligation by asking the VE to identify any conflicts between his testimony and the DOT.   *Id.* at 19-20.

Under SSR 00-4p, "[w]hen a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4.   If there is a conflict, the ALJ is to "obtain a reasonable explanation for the apparent conflict." *Id.*   Furthermore, she must resolve the conflict before relying on the VE and explain in her decision how she resolved the conflict.   *Id.*   The Eleventh Circuit has held that "when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT." *Jones v. Apfel*, 190 F.3d 1224, 1230 (11th Cir. 1999).

Here, the Court recommends that the ALJ properly complied with SSR 00-4p. *See* SSR 00-4p, 2000 WL 1898704, at *4.   The ALJ limited Plaintiff's RFC to unskilled, simple, routine, repetitive tasks and included this limitation in his hypothetical to the VE.   Tr. 19, 73.   The VE testified that a hypothetical individual with Plaintiff's limitations would be able to work as a cafeteria attendant, a marker, and a cook/helper.   Tr. 25, 74.   The ALJ inquired whether the VE testimony was consistent with the DOT.   Tr. 74-75.   The VE testified that it was, except that the DOT does not address Plaintiff's limitation to low-stress jobs based on production quotas.   *Id.*   The VE did not identify any further discrepancy.   *Id.*   The ALJ noted the VE's explanation in his decision.   Tr. 25-26.

The Court recognizes that some courts in this district have addressed similar arguments and found that a limitation to simple, routine, or repetitive tasks is inconsistent with a reasoning level of 2 or 3.   *See e.g. Estrada v. Barnhart*, 417 F. Supp. 2d 1299 (M.D. Fla. 2006); *Cousins v. Colvin*, No. 2:12-CV-505-FTM-29, 2013 WL 5278271 (M.D. Fla. Aug. 23, 2013), report and recommendation *adopted as modified*, No. 2:12-CV-505-FTM-29DNF, 2013 WL 5278483 (M.D. Fla. Sept. 18, 2013). Other courts in this circuit, including this Court, have held that a required reasoning level of 2 or 3 is not inconsistent with the ability to perform simple tasks. *See Hobbs v. Colvin*, No. 8:13-cv-3233-T-24 MAP, 2015 WL 628763, at *5 (M.D. Fla. Feb. 12, 2015) (citation omitted); *Gray v. Colvin*, No. 3:12-cv-506/EMT, 2014 WL 1118105, at *8 (N.D. Fla. Mar. 20, 2014); *Stone v. Comm'r of Soc. Sec.*, No. 2:16-cv-253-FtM-CM, 2016 WL 4425865, at *8-9 (M.D. Fla. August 21, 2016).

In contrast, other courts, including the undersigned, previously have held that once a VE testifies that his testimony is consistent with the DOT, the ALJ is not obligated to inquire further or to investigate potential conflicts that were not raised at the hearing.   *Marley v. Comm'r of Soc. Sec.*, No. 8:13-CV-2384-T-CM, 2015 WL 847376, at *1 (M.D. Fla. Feb. 26, 2015); *Stone*, 2016 WL 4425865, at *8-9.   In *Leigh v. Comm'r of Soc. Sec.*, the Eleventh Circuit upheld an ALJ's decision where, as here, the plaintiff argued that the ALJ's inclusion of limitations of "simple, routine, repetitive" tasks in the hypothetical to the VE conflicted with the reasoning level for the jobs the VE identified that the plaintiff could perform in the DOT.   496 F. App'x 973, 975 (11th Cir. 2012).

Specifically, the *Leigh* court held, "even assuming that there was an inconsistency between the VE's opinion and the DOT, the ALJ did not err in relying on the VE's opinion to determine that [the plaintiff] was not disabled" because the testimony of a VE trumps the DOT in cases of inconsistency.   *Id.* at 975 (citing *Jones, 190 F.3d at 1229-30*).   The ALJ asked the VE if there were any inconsistences, and the VE responded in the negative.   *Id.* at 973.   The court found that Plaintiff "did not offer any evidence controverting the VE's opinion, nor did she object to the opinion. . . . [Thus, b]ecause there was no apparent inconsistency between the VE opinion and the DOT, the ALJ's decision is supported by substantial evidence. " *Id.* at 975.

Furthermore, in *Garskof v. Astrue*, the court held that "the ALJ is not required independently to identify whether there is any inconsistency."   No. 5:07-cv-288-Oc-GRJ, 2008 WL 4405050, at *6 (M.D. Fla. Sept. 26, 2008).   This was especially true in *Garskof* where "[p]laintiff never identified any conflicts at the hearing and never raised any conflict through questioning the VE, despite being represented by counsel."   *Id.*; *see also Dickson v. Comm'r of Soc. Sec.*, No. 5:13-CV-48-OC-DNF, 2014 WL 582885, at *1 (M.D. Fla. Feb. 13, 2014) ("No conflicts were raised during the hearing by the vocational expert or by Plaintiff's representative.   Neither case law nor SSR 00—4p require an ALJ to resolve a conflict that was not identified and was not otherwise apparent.").

Similarly, the ALJ here complied with his duty under SSR 00-4p.   Tr. 25-26, 74-75; *see* SSR 00-4p, 2000 WL 1898704, at *4.   The VE testified that there was no

conflict, except one, which he explained and the ALJ noted.   Tr. 25-26, 74-75. During the hearing before the ALJ, Plaintiff's counsel did not identify or raise any conflicts by questioning the VE.   Tr. 77-80; *see Garskof*, 2008 WL 4405050, at *6; *see also Dickson*, 2014 WL 582885, at *1.   The ALJ was not under an independent obligation to identify and resolve any inconsistency aside from the ones identified by the VE.   *See Dickson*, 2014 WL 582885, at *1; *Leigh,* 496 F. App'x at 975.   As a result, the Court recommends that the ALJ properly relied on the VE's testimony at step five.

ACCORDINGLY, it is respectfully

**RECOMMENDED:**

1.      The decision of the Commissioner be **AFFIRMED**.

2.      The Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ENTERED** in Fort Myers, Florida on this 3rd day of July, 2017.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record